Daniels, J.
These appeals have already been considered by this court, and the result which was then believed to be warranted appears from the case as it has been reported in 38 N. Y. State Rep., 977. It was then held that the amount of the estate on which the executors should pay six per cent interest, should be $154,458.08 instead of $180,000 adopted by the referee. The counsel for the respondents strenuously insisted after the decision had been announced that this reduction had arisen out of a misapprehension of the evidence. And it was then concluded to rehear and further consider the case. That has now been done, and the case has been examined again, but without discovery that this conclusion was substantially out of the way.
It is true that the acting executor has sworn that the balance of $180,921.22 stood to the credit of the deceased testator’s estate in.the books of the new firm, and would be accounted for as his estate. But he did not testify that this sum represented so much capital, or money used, or employed in the newly formed firm. And the account contained in the case, as well as his evidence, which was the proof acted upon by the referee, exhibits the fact to be that it was in part made up of securities from which it does not appear that any income whatever had been derived. And he testified directly that the $30,000 for 300 shares of the Sloss Iron & Steel Company, which were appraised at the sum of $18,000 and at that amount formed part of the $180,921.22 paid no income at all. His answer was : “ There has been no' income from it” And he also answered as to the Graphic stock, in like manner entering into the appraisal at the sum of $1,000, that “ we have had no income from it at all.”
These two items reduce the general result of the appraisement and the credits to the sum of $161,000 instead of $180,000 adopted by the referee. And it does not appear that any advantage whatever was derived from them, for which the executors could be'. *890 legally charged with interest. And it is very probable that other securities were equally unproductive, and for that reason presented no legal basis for the allowance, or support of the interest charges, made by the referee. This view is directly confirmed by the evidence given concerning what has been mentioned as the I. E. and bond accounts. As to the former there is some confusion in the evidence m its reference to the securities of that account, and the advantages actually derived from the account itself, by the new firm, which was permitted by the executors to use the moneys of the estate. But the witness, by his evidence, has so far distinguished between the securities and the available capital of that account as to place the interest of the estate in it at the sum of $120,825.45, while it was credited in the appraisement at $96,660.36. As to that the same witness testified, “ We had this account. That represented money invested in a speculative account in the business. That money was used to carry the securities in the business at that time. Those were the securities that were being speculated in by every customer. Instead of borrowing that amount of money, we used that to carry these securities.” He added further, that they “ were no longer carrying securities for customers in the old firm." And “ the customers were charged six per cent; that is, somebody had to pay six per cent for the money that was used.” He also testified that “we charge customers interest on the money we have used for carrying for them; we charge six per cent." And he thought all the customers to be good. This evidence, which was not otherwise qualified, but was corroborated by the witness Gould, who stated that Rutherford had that money, did justify the interest charge of six per cent, to the extent of this sum of $120,825.45, and so far sustains the conclusion of the referee.
There was also a bond account, as it has been called in the appraisal, which the witness testified had been created prior to the decease of the testator, and which, at the time of his decease, exhibited a balance of $36,192.40. This originated in a loan of $33,347.83, made by him in his lifetime, and returned interest at the rate of six per cent. This interest was received by this firm, which the executors permitted to collect and use it, and for that they were legally charged by the referee. A charge of $3,786.41 was made against the credit in the appraisal, but its propriety does not seem to be maintained by the evidence of the executor, whose testimony has been chiefly depended upon in the decision of the case by the referee. And it therefore seems to be entirely fair, to charge the executors with interest on this sum of $36,192.40 for the interest added in the account to the principal loaned, and interest collected, from time to time, and permitted by them to be used by the new firm. There were other loans made, but it seems probable that the money was a part of the I. R. account, and, therefore, not increasing the amount of money used, or the interest collected by the firm. And it does not appear that there were any other sources from which interest could be or was obtained, than the two which have already been mentioned. The other items consist of securities, upon none of which was it shown *891 that dividends were paid. And as a large part of them were appraised at no more than a nominal value, it is altogether probable that they yielded no revenue in any form or shape. Some of the securities are stated by this witness, and also by Mr. Baring Gould, another of the executors, to have been sold, and the proceeds used to pay the debts of the testator. And the amount of these added to the §19,000, which Mr. Butherford testified produced no income, will reduce the inventory to nearly the amount already directed as the aggregate, on which six per cent interest should be charged. And nearly the same result is also reached by adding to the money in the I. B. account, the loan and interest upon it of $36,192 40, which this witness testified represented cash.
The results maintained by these two sources justify the conclusion that the firm received, and the executors should be charged with, six per cent interest upon the aggregate sum of $157,017.85, which is an increase of $2,559.77 over the aggregate sum on which interest was directed to be computed when the decision herein was first announced.
It is stated in the argument of the respondents’ counsel that one of the beneficiaries in the trust created by the will, is deceased. If that is the fact then an ample fund has been discharged from the trust, out of which the costs may be obtained. And there can be no necessity for the further consideration of their payment.
But the decree should be modified by directing the interest to be computed at the rate of six per cent upon the sum of $157,-017.85 and divided on that basis, after deducting the payments already made on account of interest under the orders of the surrogate or otherwise. And as so modified the decrees should be affirmed, without costs of the appeals.
Van Brunt, P. J., concurs.